BARRY, Judge.
On February 23,1984 Joycelyn Duplessis was stopped near an intersection when her station wagon was rear-ended by a van driven by Judith Inman.
Duplessis brought this suit for personal injuries against Inman and her insurer, USAA Casualty Insurance Co., and Duples-sis’ uninsured motorist carrier State Farm Insurance Co.[1] The USAA policy limit is $50,000.
A jury awarded Duplessis general and special damages of $15,000 against Inman and USAA, in solido, plus interest and *881 costs. State Farm was dismissed at plaintiff’s cost.
Duplessis’ appeal essentially urges that the damages were inadequate because the jury attributed inordinate weight to the testimony of the defense medical expert over Duplessis’ treating physicians.
A damage award should not be disturbed absent a determination that under the facts of the particular case the factfinder abused its much discretion. Reck v. Stevens, 373 So.2d 498 (La.1979).
Dr. Hewitte Thian, a general surgeon, testified that he had seen Duplessis for over ten years prior to trial for gallbladder problems and she had no prior back or neck complaints. He examined Duplessis the day after the accident and diagnosed an acute cervical strain, post-traumatic headaches, and hematoma of a surgical scar. Muscle relaxants and pain medication were prescribed.
On March 2, 1984 Dr. Thian found her condition improved and the hematoma was draining. The prescriptions were refilled.
On March 16, 1984 Dr. Thian found an inflammatory reaction on the scar and outpatient surgery was performed.
On March 23 and 28 Dr. Thian removed clots from the hematoma and prescribed antibiotics. On April 6 Duplessis had improved, but was given pain medication and an appetite stimulant to counteract another medication.
On May 4 Duplessis’ scar was sore and she had nausea from the antibiotics. On May 23 she complained of chest pain on her right side and, a month later, of pain in her neck and shoulder down to her right hand. Medicine for arthritis and pain were prescribed.
On July 13 Dr. Thian treated her for a gallbladder problem. On August 1 Duples-sis saw Dr. Thian for back pain and muscle spasms. On December 28, 1984 she complained of weakness in her right hand, a new symptom.
Dr. Thian referred Duplessis to Dr. Is-sam Elmorshidy, an orthopedic surgeon, and did not see her again until June through July, 1987 when she had complaints of pain in her right upper back. Dr. Thian prescribed antibiotic and pain medication as well as diet medication because she gained forty pounds since the accident.
Dr. Thian testified he never found lumbar problems and her injuries did not seem severe at the time. He felt her condition would resolve in two to three months. He did note that the medication for her neck and upper back would also give relief in the lumbar area. His primary concern was the life-threatening hematoma and the possibility of internal injuries. He did not find it unusual that she could develop lumbar problems.
Dr. Thian said Duplessis followed his orders without difficulty, she did not have imaginary complaints, and did not take an inordinate amount of medication. He found that she did not require as much medication as other people with the same problems.
Dr. Elmorshidy saw Duplessis by referral from Dr. Thian on January 3,1985. He found neck muscle spasms, soreness of the lower neck and of the right shoulder blade muscles, including an exceptionally tender area at the border of the shoulder blade. An x-ray of the neck revealed some loss of the natural curve due to spasms.
Dr. Elmorshidy diagnosed a cervical spine strain and an inflammation of the neck and shoulder blade. He prescribed anti-inflammatory medication and a rubbing lotion.
On January 17, 1985 Dr. Elmorshidy injected cortisone into the sore shoulder blade. On February 7 she had some improvement although moderate spasms and stiffness were present. She was advised to start physical therapy for her neck.
On March 8 and April 4 Duplessis was seen by an associate of Dr. Elmorshidy who found spasms and swelling in the neck and shoulder blade areas. He started her on exercises and refilled her medication.
April 25, May 7 and May 28 visits reported continued muscle spasms and tenderness, plus an initial complaint of lumbar pain. Duplessis told Dr. Elmorshidy the *882 lumbar pain was present since the accident but she did not complain because her neck was causing greater pain. An x-ray of the lumbar area was normal.
Dr. Elmorshidy saw her 43 more times through July 27,1987. The complaints and findings were basically the same except for improvement and worsening at various times, including a re-injury in September 1985 from pulling on a mattress and a complaint of leg pain from her lower back. In January, 1985 a CAT scan showed degenerative changes. She received five cortisone and one steroid injection.
On July 21,1986 Duplessis was admitted to Chalmette General Hospital for a myelo-gram which showed a defect at C6-7 and no problems in the lumbar area. A March 9, 1987 x-ray of the lumbar spine indicated a change in the curvature and arthritic changes.
After July 23, 1987 Dr. Elmorshidy was on sick leave and Duplessis was treated by his associate, Dr. Raul Diaz. He continued to treat her up to the trial.
Dr. Diaz testified as board eligible but not board certified in orthopedic surgery. Duplessis continued the regular office visits with basically the same complaints and treatments, but the symptoms gradually worsened. In September, 1987 an EMG test revealed nerve root problems corresponding to problems indicated by physical examinations. The results of a CAT scan were “consistent with stenosis, which means narrowing in the canal” at two levels, especially at the L5-S1 level resulting from a bulging disc at L4-5.
In November, 1987 Duplessis was admitted to the hospital for 5-6 days of physical therapy, traction, a myelogram and an MRI. The myelogram showed bulges at L4-L5 and L3-L4. Dr. Diaz recommended an epidural injection of cortisone and nova-caine. Since that date the office visits indicate the injection provided relief although she had back pain at the site of the epidural puncture.
Dr. Diaz’ prognosis at trial was that her activity would be restricted and her medication should continue. He said a final prognosis could not be made because the injection might wear out at any time.
Dr. James Williams, orthopedic surgeon, testified for the defendants. He found no objective injury but he noted the complaint of back pain. He opined that the x-rays showed hypertrophic spurs on the dorsal spine related to wear and tear rather than the accident. He also found slightly narrowed lumasacral disc space which he said was not related to the accident.
Dr. Williams said Duplessis suffered a ligament strain in the neck and back from the accident and had no objective evidence of residual injury or orthopedic disability. He felt the mild disc bulge in the lower lumbar spine was not caused by trauma and was a degenerative change. He saw no basis to relate the lower back pain to the accident.
Duplessis testified that her auto was hit as she leaned forward to reach for the ashtray. Her body twisted and she hit her head. After a few minutes she got out. Her auto’s bumper and rear door were jammed, the roof folded in and the doors buckled.
Duplessis said that when she got home after the accident she had pain across her stomach and under her right ribs and went to Chalmette General Hospital where x-rays were taken. The next morning she saw Dr. Thian with complaints of a stiff neck and pain in her torso and upper body. She took medication and in March Dr. Thi-an treated her for a “sore draining on my stomach” surrounding one of the stitches from an earlier surgery.
Duplessis stated that she continued to have problems with her neck and in December, 1984 she experienced pain in her lower back and a lack of feeling in her left leg which kept her awake at night. She claimed that although she experienced lower back problems three to four weeks after the accident, she did not tell Dr. Thian because the pain was irregular and she thought it would go away. The neck pain moved to her arm and two of her fingers were numb. When she told Dr. Thian in December, 1984 about the lower back and *883 finger problem he referred her to an orthopedic surgeon.
Duplessis said she had no back, neck or orthopedic problems prior to the accident. She described herself as formerly very active. She remodeled her home, cared for her children and granddaughter, and played various sports. Since the accident her activities have been limited to cooking and laundry.
Duplessis described the pain she experienced:
Well, I’ve had it in my neck and it goes down onto my shoulders and down the middle of my spine, right by the shoul-derblade [sic] and up behind my head here and I get headaches, sometimes the headaches last two days and they make me nauseous, in my lower back is a steady pain but it’s also like an electrical shock, if anyone’s ever touched any electrical wires or anything, you know that feeling you get, along with the steady pain you get that and similar to like a charley horse would be, everything cramps up really bad in my leg. And I also have the pain in my left buttocks, it stays there all the time. That the shot didn’t help at all. It only relieved some of the pain down into my leg. But the weather hasn’t been helping that much out either.
She testified that as of the date of trial she had paid about $15,000 in medical expenses which were not covered by insurance.
Karen Benfiglil, Duplessis’ sister, corroborated Duplessis’ testimony regarding her prior and present activity. Benfiglil said she saw her sister in “great pain” which worsened after her accident.
Various receipts were introduced by stipulation, but not all are related to the accident. The receipts show over $21,000 in medical expenses and $2,231.59 for auto repairs. The record is unclear as to who paid for the auto repairs, though a statement in the transcript that Inman’s insurer provided a vehicle to Duplessis while hers was being repaired suggests payment by Inman’s insurer.
The jury awarded $15,000, the approximate amount of Duplessis’ out of pocket expenses. Apparently the jury chose not to make an award for pain and suffering or for the residual disability. The testimony of Duplessis describing her pain and residual injury was corroborated by her treating physicians, and convinces us she suffered considerable pain over many months.
Only the relationship of the pain and residual injury to the accident was contradicted by defendants’ expert, but he did not dispute its existence. In making the award the jury obviously concluded that Duplessis’ injuries were related to the accident. The jury failed to make any award for pain and suffering or for residual disability which we find is an abuse of its discretion.
On finding an abuse of discretion a court may only raise an award to the lowest point reasonably within the discretion of the trier of fact. Emerson v. Empire Fire & Marine Ins. Co., 393 So.2d 691 (La.1981).
Considering the explicit medical testimony we think a total award of $50,000 is the lowest amount reasonably within the trier of facts’ discretion for pain and suffering, residual disability, and medical expenses.
Duplessis suggests, without arguing, State Farm breached its fiduciary duty by defending against Duplessis’ claim against Inman. State Farm, as Duplessis’ UM carrier, was sued by Duplessis in the event her damages exceeded the policy limits of the USAA policy. State Farm defended against the suit. We find no fiduciary breach by State Farm.
The judgment of the district court is amended as follows:
Judgment is rendered in favor of Joyce-lyn Duplessis and against Judith Inman and USAA Casualty Insurance Co., in solido, in the total sum of FIFTY THOUSAND AND NO/100 DOLLARS ($50,-000.00), with interest from date of judicial demand and all costs....
*884 As amended, the judgment is affirmed.
AMENDED; AFFIRMED.

. This suit included Duplessis’ son who subsequently died and that claim is not on appeal.